**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **ROBERT TAVERNINI** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Case No. 4:12cv420** |
| | § | |
| **BANK OF AMERICA, N.A., ET AL.** | § | |
| | § | |
| **Defendants** | § | |

**MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

Now before the Court is Defendants' Motion for Summary Judgment (Dkt. 35). As set forth

below, the Court finds that the motion should be GRANTED and that Plaintiff Robert Tavernini

should take nothing by any of his claims here.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This matter arises from Plaintiff's purchase of real property located at 1100 Simmons Road,

Flower Mound, Texas 75022 ("the Property"). On August 24, 2004, Plaintiff simultaneously

executed a deed of trust ("the Deed of Trust") and promissory note ("the Note") of in favor of

Countrywide to acquire the Property. The Deed of Trust identified Mortgage Electronic Registration

Systems, Inc. ("MERS") as the Deed of Trust's beneficiary. MERS executed an assignment of the

Deed of Trust to Bank of New York on or about February 14, 2011.

According to Plaintiff, as a result of decreased revenue and family illness, he first contacted

Countrywide in 2007 regarding deferring his monthly payment and ultimately modifying the terms

of his loan. Plaintiff claims that he was told he would have to miss three payments in order to have his loan modified. Plaintiff also claims that Countrywide promised to mail him a loan modification application but that it never arrived.

Plaintiff claims that he again contacted Countrywide in June 2009 regarding a loan modification. Plaintiff claims that he faxed information requested by Countrywide, only to be told that they had not received it.

Apparently sometime in 2009, Plaintiff began to miss payments and failed to pay his property taxes. *See* Dkt. 35 at 5. To prevent foreclosure, Plaintiff entered into a written repayment plan with the Defendants on October 16, 2009, but several of his repayment plan payments were returned by Defendants because they were not sent via certified funds. On December 14, 2010, Bank of America sent Plaintiff notice that his loan was in serious default, provided an amount to cure, and advised that if the default was not cured, the loan would be accelerated and foreclosure would be initiated. The loan was subsequently accelerated on February 23, 2011, and the Property was set for foreclosure sale on April 4, 2011.

After Plaintiff filed for bankruptcy and the bankruptcy was dismissed, the foreclosure sale of the Property was set for July 3, 2012 and rescheduled to August 7, 2012.

Plaintiff filed this suit in the 367th District Court, Denton County, Texas on June 29, 2012, and, on July 10, 2012, Defendants timely removed the state lawsuit to this Court.

After removal, Plaintiff amended his complaint to allege the following causes of action against Defendants Bank of America, N.A. and the Bank of New York Mellon: (1) breach of contract and anticipatory breach of contract; (2), unreasonable collection efforts; (3) violations of the Texas

Debt Collection Practices Act, and (4) negligent misrepresentation. *See* Dkt. 19. Plaintiff seeks a declaratory judgment, specific performance, accounting, and damages from what he alleges are wrongful actions by the Defendants. Defendants now seek summary judgment as to all of Plaintiff's claims.

## EVIDENCE PRESENTED

In support of their motion for summary judgment, Defendants have offered the following summary judgment evidence:

| | |
|---|---|
| Exhibit A: | Deposition of Robert Tavernini; |
| Exhibit A-3: | Interest Only Adjustable Rate Note; |
| Exhibit A-4: | Deed of Trust; |
| Exhibit A-5: | Loan Agreement Notice; |
| Exhibit A-9: | October 16, 2009 Repayment Plan; |
| Exhibit A-10: | December 14, 2010 Notice of Default; |
| Exhibit A-12: | January 2011 Mortgage Statement; |
| Exhibit A-13: | February 22, 2011 letter from BANA returning $27,836.74 check; |
| Exhibit A-14: | February 23, 2011 letter from ReconTrust to Tavernini; |
| Exhibit A-15: | Voluntary Petition for bankruptcy (filed April 4, 2011); |
| Exhibit A-17: | Payoff demand dated March 31, 2011; |
| Exhibit A-19: | Tavernini's Amended Schedule A (filed September 13, 2011); |
| Exhibit A-21: | Order Dismissing Tavernini's bankruptcy (signed October 28, 2011); |
| Exhibit A-22: | Notice of Substitute Trustee's Sale; |
| Exhibit A-23: | Plaintiff's June 13, 2012 letter to BANA; |
| Exhibit A-25: | June 25, 2012 letter from BANA to Tavernini; |
| Exhibit A-26: | June 26, 2012 letter from BANA to Tavernini; |
| Exhibit A-27: | Notice of Substitute Trustee's Sale; |

| | |
|---|---|
| Exhibit A-28: | Corporate Assignment of Deed of Trust/Mortgage; |
| Exhibit A-32: | May 2010 Statement; |
| Exhibit A-35: | August 2010 Statement; |
| Exhibit A-36: | August 30, 2010 Statement; |
| Exhibit A-38: | October 28, 2010 Statement; |
| Exhibit A-39: | November 29, 2010 Statement; |
| Exhibit B: | Certificate of Amendment of Registration of a Foreign Limited Partnership; |
| Exhibit C: | Certificate of Merger; |
| Exhibit D: | Declaration of Michael J. McKleroy, Jr.; |
| Exhibit D-1: | Awestruck Boarding & Breeding Co. Inc. Bank Statements; and |
| Exhibit D-2: | Milestones of Achievement, Inc. Bank Statements. |

Dkts. 35-1– 35-5.[1]

In response to Defendants' motion for summary judgment, Plaintiff has presented the following evidence:

| | |
|---|---|
| Exhibit 1: | Affidavit of Robert Tavernini; |
| Exhibit 1A: | Note; |
| Exhibit 1B: | Deed of Trust; |
| Exhibit 1C: | Appointment of Substitute Trustee; |
| Exhibit 1D: | Notice of Substitute Trustee's Sale Dated May 29, 2012; |

---

[1]Defendants also attach to their summary judgment reply: Exhibit E: Declaration of Michael J. McKleroy, Jr.; Exhibit E-1: Tables 1 and 2 summarizing ending monthly balances and highest daily balances for all Tavernini's accounts from February 2012 through July 2012; Exhibit E-2: February 2012-July 2012 Wells Fargo bank statements for Milestone's of Achievement, Inc.; Exhibit E-3: February 2012-July 2012 Wells Fargo bank statements for Awestruck Boarding & Breeding Co., Inc.; Exhibit E-4: February 2012-July 2012 Wells Fargo bank statements for The Ultracentric, Inc.; Exhibit E-5: February 2012-July 2012 Wells Fargo bank statements for Robert Tavernini. *See* Dkts. 44-1– 44-6.

Exhibit 1E:    Notice of Substitute Trustee's Sale Dated July 10, 2012;

Exhibit 1F:    February 3, 2011 Letter from Bank of America Returning January 27, 2011 Check;

Exhibit 1G:    February 22, 2011 Letter from Bank of America Returning February 16, 2011 Check;

Exhibit 1H:    October 16, 2009 Letter from Defendants offering repayment plan;

Exhibit 1I:    Payments on 2009 Repayment Plan;

Exhibit 1J:    Email from Andrea Sellers dated December 21, 2009;

Exhibit 1K:    June 13, 2012 Loan Modification Request;

Exhibit 1L:    June 25, 2012 Loan Modification Request;

Exhibit 1M:    December 14, 2010 Letter from Bank of America;

Exhibit 1N:    Bankruptcy Filing;

Exhibit 1O:    Dismissal of Bankruptcy;

Exhibit 2:     Affidavit of Michael P. Moore;

Exhibit 2A:    Loss Mitigation Home Base 2 Notes;

Exhibit 2B:    Bank of America Comments History;

Exhibit 3:     Certified Copies of Declarations File for *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation* (No. 1:10-md-02193 Doc. 210);

Exhibit 3A:    Declaration of William E. Wilson, Jr.;

Exhibit 3B:    Declaration of Simone Gordon;

Exhibit 3C:    Declaration of Theresa Terrelonge;

Exhibit 3D:    Declaration of Steven Cupples;

Exhibit 3E:    Declaration of Recorda Simon;

Exhibit 3F:    Declaration of Erika Brown; and

Exhibit 4:     Excerpts from Deposition of Sirdonia A. Davis, Corporate Representative of Bank of America.

Dkts. 36-1 – 36-4.

<h2 style="text-align:center">SUMMARY JUDGMENT STANDARD</h2>

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence

of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

**ANALYSIS**

## Plaintiff's Breach of Contract Claims

Plaintiff's breach of contract action is based on several theories of recovery. Plaintiff claims that Defendant Bank of America violated the Texas Property Code, breached the Deed of Trust, and had no standing to foreclose. Specifically, Plaintiff asserts that "[b]ecause BOA does not hold or own the Note, it has no power to pursue foreclosure." Dkt. 19 at ¶18. Plaintiff also alleges that, even if Defendants had the right to accelerate and foreclose, Defendants breached paragraph 19 of the Deed of Trust, which gave him the right to reinstate after acceleration by paying all sums due, and paragraph 2 of the Deed of Trust by misapplying funds. *See* Dkt. 19 at ¶¶23, 25. Finally, Plaintiff argues that Defendants conduct constituted a waiver of the right to accelerate and foreclose and that Defendants repudiated their obligations. *See* Dkt. 19 at ¶¶26-29.

In order to establish a breach of contract claim, Plaintiff must plead facts showing: (1) the existence of a valid contract; (2) performance or tender of performance by Plaintiff; (3) breach by

Defendants; and (4) damages resulting from the breach. *Cadillac Bar West End Real Estate v. Landry's Restaurants, Inc.,* 2013 WL 1721954, 2 (Tex. App. – Dallas 2013, no pet.) (citing *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App. – Dallas 2008, no pet.). Further, in order to properly plead a claim based on breach of the contract, Plaintiff must point to a specific provision in the contract that was breached by Defendants. *Coleman v. Bank of Am., N.A.*, 2011 WL 2516169, at *1 (N.D. Tex. 2011) (citing *Case Corp. Inc. v. Hi-Class Bus. Sys. of Am.*, 184 S.W.3d 760, 769 – 70 (Tex. App. – Dallas 2005, pet. denied)) (dismissing breach of contract claim for failure to state a claim where "plaintiff points to no specific provision in the Deed of Trust that was breached by defendant").

The Court first turns to Plaintiff's claims regarding MERS's assignment of the Deed of Trust and resulting authority thereunder.[2] The Court finds that, as a matter of law, the allegations regarding Defendants' lack of authority to foreclose because MERS did not have the authority to transfer the Note are not sufficient to state a breach of contract claim. Plaintiff's "split the note theory" has been consistently rejected in this Circuit. *Martins v. BAC Home Loans Serv., L.P.*, 722 F. 3d 249, 255 (5th Cir. 2013) ("The split-the-note' theory is therefore inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned."); *Casterline v. OneWest Bank, F.S.B.,* 537 Fed. App'x 314, 317 (5th Cir. 2013) ("MERS had the authority to transfer the Security Instrument together with the power to foreclose to another party, including OneWest."); *Wigginton v. Bank of New York Mellon*, 488 Fed. App'x 868, 870 (5th Cir.

---

[2]It is unclear from Plaintiff's summary judgment response whether he continues to base any of his claims on a challenge of Defendants' authority. Out of an abundance of caution, and to the extent not already waived, the Court addresses it here.

2012) (affirming dismissal of breach of contract and other claims that Texas law rejects split-the-note theory). "Under Texas law, a non-judicial foreclosure may be initiated by the current mortgagee including: the grantee, beneficiary, owner, or holder of a security instrument; a book entry system; or the last person to whom the security interest has been assigned of record." *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 342 (5th Cir. 2013) (citing TEX. PROP. CODE § 51.0001(4)) (internal quotations omitted) (finding Deutsche Bank had authority to foreclose as mortgagee where the deeds of trust named MERS the beneficiary of Cornerstone and MERS later assigned the deeds of trust to Deutsche Bank). "[T]he mortgage servicer need not hold or own the note and yet would be authorized to administer a foreclosure." *Martins*, 722 F. 3d at 255 (5th Cir. 2013). *See also Casterline v. OneWest Bank, F.S.B.*, 537 Fed. App'x 314, 318 (5th Cir. 2013) ("Texas law did not require OneWest to present the original Note to foreclose on Casterline's property."); *Hall v. BAC Home Loans Serv., L.P.*, 2013 WL 5515144, 3 (5th Cir. 2013) (the plaintiff's "characterization of Texas law is incorrect—it simply was not necessary for BAC to possess the note to foreclose."); *Epstein v. U.S. Bank Nat. Ass'n*, 2013 WL 5340766, 3 (5th Cir. 2013).

Moreover, the Deed of Trust attached to Plaintiff's amended complaint and Defendants' motion for summary judgment provides:

> TRANSFER OF RIGHTS IN THE PROPERTY
> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property...

Dkt. 19-1 at 3; 35-2 at 11.  Defendants have also provided a copy of a Corporation Assignment of Deed of Trust/Mortgage, executed on February 14, 2011, assigning MERS's interest in the loan to Bank of New York.  *See* Dkt. 35-2 at 116.  Based on the clear language of the Deed of Trust and Assignment, there is no stated breach of contract claim based on MERS's assignment of the mortgage.  Bank of New York has established its rights under the Deed of Trust, and Bank of America has established its rights as mortgage servicer.[3]  There is no fact issue.

The Court next addresses Plaintiff's claims that "it was Defendants' false promises of a loan modification that led Plaintiff into remaining in default."  Dkt. 36 at 8.  To the extent any oral representations were made, any such promises are barred by the statute of frauds and cannot form the basis of a breach of contract claim.  *See* TEX. BUS. & COM. CODE § 26.02(a)(2) and (b) (a loan agreement involving a loan exceeding $50,000 in value is subject to the statute of frauds); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (any contract subject to the statute of frauds and not in writing is unenforceable under Texas law).  Governing authority is clear that any modification of the underlying loan agreement must have been in writing for Plaintiff to base a contract claim on it.  *Martins v. BAC Home Loans Serv., L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) ("An agreement regarding the transfer of the property or modification of a loan must therefore be in writing to be valid."); *Gordon v. JPMorgan Chase Bank, N.A.*, 505 Fed. App'x 361, 364 (5th Cir. 2013) (original mortgage documents and forbearance agreement are governed by the statute of frauds

---

[3]The Court notes that Plaintiff's complaint never identifies Bank of America as a servicer – and in fact does not identify its role at all.  Nonetheless, Plaintiff does not dispute Bank of America's claim that it serviced the loan, a claim that is supported by the summary judgment record and Plaintiff's allegations regarding his communications with Bank of America regarding the payments on his loan.

and cannot be modified by subsequent oral agreement to modify the loan). Plaintiff's claims as to this alleged breach fail.

Further, promissory estoppel cannot save Plaintiff's claims. Promissory estoppel only overcomes Texas's statute of frauds where the alleged oral agreement to modify a loan is accompanied by the lender's or its agent's promise to sign a written agreement validating the oral agreement that itself satisfies the statute of frauds. *Martins*, 722 F.3d at 256 ("Martins alleges only an oral agreement, not a promise on the part of BAC or its agents to sign an agreement validating the oral agreement that would satisfy the statute of frauds."); *Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (lack of promise to sign a prepared document that comports with Texas's statute of frauds, which would have memorialized oral promises regarding modification was fatal to borrowers' promissory estoppel claims); *Martin-Janson v. JP Morgan Chase Bank, N.A.*, 536 Fed. App'x 394, 398 (5th Cir. 2013).

In support of his claim of promissory estoppel, Plaintiff cites generally to his affidavit to argue that "BOA promised Plaintiff repeatedly that it would modify Plaintiff's loan." *See* Dkt. 36 at 12. The affidavit is the only summary judgment evidence he relies upon to support his claim of a promise. It is not enough. Plaintiff has cited to no summary judgment evidence that would show that the representative promised to memorialize the statement – which would in essence modify the terms of the loan modification plan (a plan subject to the statute of frauds) – in writing. *Milton v. U.S. Bank Nat. Ass'n*, 508 Fed. App'x 326, 329 (5th Cir. 2013) (when no evidence exists to establish an oral agreement to reduce an otherwise unenforceable promise to writing, in satisfaction of the statute of frauds summary judgment with respect to an estoppel claim is proper).

Although Plaintiff fails to cite to any specific provision in the affidavit – as is his summary judgment burden – the Court notes that Plaintiff's affidavit does contain claims that, in August 2007, a Bank of America representative promised to mail him a loan application but did not, that in February 2012 he was told that he would receive loan modification materials via FedEx but he did not receive them, and that in May 2012 he accepted a loan modification from Defendant. *See* Dkt. 36-1. Plaintiff's summary judgment record does not contain a copy of the May 2012 loan modification he claims to have accepted, although it does contain copies of two letters from him to Bank of America purportedly accepting it. The Court finds Plaintiff has not sustained his burden in showing a promise to sign an agreement such that the statute of frauds can be overcome.

Further, even if Plaintiff's scant affidavit were enough summary judgment evidence to create a genuine issue of material fact as to whether Defendants promised to sign a written loan modification agreement, *see, e.g., Martin-Janson, N.A.*, 536 Fed. App'x at 399 (reversing dismissal of promissory estoppel claim to allow the plaintiff to seeks discovery to reveal either the draft loan modification agreement that JPMorgan allegedly prepared, or the terms of her promised modification based on the lender's standard formulae to show that JPMorgan promised to sign a written agreement which itself complies with the statute of frauds), Plaintiff has failed to offer any summary judgment evidence that would create a fact issue as to his reliance damages, a required element of his claim. *Watson v. CitiMortgage, Inc.,* 530 Fed. App'x 322, 327 -328 (5th Cir. 2013) (affirming finding of district court that no genuine issue of material fact existed as to promissory estoppel where plaintiffs did not explain how any damages result from their reliance on any promises by the lender); *Shatteen v. JP Morgan Chase Bank, N.A.*, 519 Fed. App'x 320, 322 (5th Cir. 2013).

"Reliance damages cover expenditures made in preparation for performance or in performance, and essentially seek to restore the status quo by putting the injured party in the position he would have been in had the contract not been formed." *Waltner v. Aurora Loan Serv., L.L.C.*, 2013 WL 6858124, 3-4 (5th Cir. 2013) (internal citations, quotation and alterations omitted). Here, Plaintiff cites to the partial payments he made to Bank of America as support for his reliance on any modification promises. This is simply not enough. There must be some evidence to show the action, or actions, Plaintiff would have taken had he not received the promise to modify his loan. *Id.* at 4 ("Absent the promise to modify their loan, the Waltners would still have been in default..., [and] any award of damages by the jury would be based on pure speculation."). Here, Defendants have offered bank statements from February through July 2012 to show Plaintiff did not have enough to make his loan current. *See* Dkts. 44-1 – 44-6. Thus, regardless of a modification – and with no summary judgment to demonstrate otherwise – he would have remained in default and cannot show reliance damages necessary for his claim.

Next, the Court next turns to Plaintiff's claim that Defendants' conduct constituted a waiver of the right to accelerate and foreclose and that Defendants repudiated their obligations. The Deed of Trust expressly provides that "[a]ny forbearance by Lender in exercising any right or remedy … shall not be a waiver of or preclude the exercise of any right or remedy." Dkt. 19-1 at § 12. Given the express language of the Deed of Trust, Plaintiff cannot base a breach of contract action on this theory.

As to Plaintiff's claim of "anticipatory breach," the Court finds that requisite repudiation needed for such a claim is not present. *Gonzalez v. Denning*, 394 F.3d 388, 394 -95 (5th Cir. 2004)

(in order to prevail on a claim for anticipatory breach, a plaintiff must establish each of the following elements: (1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party). Plaintiff has not sufficiently stated Defendants' repudiation and it is not shown by the summary judgment evidence. As discussed above, the Court finds that the clear language in the Deed of Trust regarding waiver precludes such a claim as a matter of law.

Next, the Court turns to Plaintiff's claim that Defendants breached paragraphs 2 and 19 of the Deed of Trust. Paragraph 2 of the Deed of Trust deals with the "Application of Payments or Proceeds," and paragraph 19 of the Deed of Trust deals with the "Borrower's Right to Reinstate After Acceleration." *See* Dkt. 19-1.

Plaintiff argues that he sent a check, dated February 16, 2011, in the amount of $27,836.74 to Bank of America but Bank of America wrongfully rejected it because the funds were not sent via "certified funds." According to Plaintiff, paragraph 19 permits payments to be made by cash, money order, certified check, bank check, treasurer's check or cashier's check.

Defendants respond that Bank of America had the right to reject the check because: (1) evidence show that Plaintiff did not have $27,836.74 in his account on the date the check was written; (2) the amount allegedly tendered did not represent the amount due on February 1, 2011 but only the amounts due on January 1, 2011; and (3) because Plaintiff had previously bounced a check, Bank of America had the right to require the payment be made in certified funds. Defendants specifically cite to provisions within the Deed of Trust that state that "[l]ender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan

current," Dkt. 19-1 at ¶1, that, if a check is returned to Lender unpaid, Lender may require that "any or all subsequent payments due . . . be made . . . [by] certified check, bank check, treasurer's check or cashier's check," Dkt. 19-1 at ¶1, and that, after acceleration, Lender may select the form of reinstatement payment, including requiring that payment be made by "certified check, bank check, treasurer's check or cashier's check." Dkt. 19-1 at ¶19. Defendants also cite to Plaintiff's deposition testimony, a mortgage statement, and a bank statement to show that he bounced a check in May 2010. *See* Dkt. 35-1 at 61-62, 35-2, 35-5. Plaintiff has offered no evidence that would controvert this summary judgment evidence. Based on the clear language of the Deed of Trust as to the requirement that certain payments be made at the Lender's direction (as well as the uncontroverted evidence that Plaintiff had previously bounced a check), the Court finds that Plaintiff's claim under Paragraph 19 fail.

As to paragraph 2, Plaintiff claims that Defendants breached the Deed of Trust by reversing a payment in May 2010, only reposting the amount for principal and interest and failing to apply an amount to Plaintiff's escrow account. Plaintiff also claim that Defendants breached paragraph 2 by posting an August 2010 payment to his suspense account, rather than to his principal and interest balance.

Plaintiff cites to the Deed of Trust, his affidavit, and checks returned in January and February 2011. *See* Dkt. 36 at 9. This evidence does not create a fact issue as to Plaintiff's allegations of a reversed May 2010 payment or an August 2010 suspense payment. Again, the Court is not required to scour the record to identify materials reflecting the activity in Plaintiff's account in May and

August 2010.  It is Plaintiff's burden to specifically cite to it.[4]

Defendants, on the other hand, cite to Plaintiff's deposition and the May 2010 mortgage statement to show that "the payment reversed in May 2010, was done so because Tavernini's payment was returned for insufficient funds and, when he resubmitted the payment, he did so in a lesser amount that excluded the escrow portion" Dkt. 35 at 24.  Defendants again cite to Plaintiff's deposition testimony and to an August 2010 mortgage statement and Plaintiff's bank records to show that the amount Plaintiff paid in August was the amount of principal and interest due and did not include escrow and that the Deed of Trust gave it the right to refuse any partial payment.  *Id.* at 25.  As Plaintiff has not shown how the summary judgment evidence would create a fact issue to the contrary, the Court finds that no fact issue has been shown through competent summary judgment evidence as to any allegations regarding misapplied or reversed payments.

Having reviewed the summary judgment record in its entirety and having applied it to Plaintiff's various breach of contract theories, the Court finds that Defendants' motion should be

---

[4]At best, Plaintiff's summary judgment response contains general and sporadic references to the summary judgment record.  Such cites are not sufficient to sustain his burden.  *See* E. D. TEX L.R. CV-56(d) (stating that summary judgment citations should be referred to by page and, if possible, by line of the summary judgment evidence). *See also Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas,* 136 F.3d at 458; *Stults,* 76 F.3d at 657; *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); *Skotak,* 953 F.2d at 916 n. 7; *see also Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1307 (5th Cir.1988) (it is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf. U.S. v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")). Plaintiff is required to show *how* the evidence creates an issue of material fact by citing to specific portions of the record.  He has not done so here.

GRANTED for Defendants as to all of Plaintiff's breach of contract and anticipatory breach of contract claims and Plaintiff shall take nothing by those claims.

**Common Law Tort of Unreasonable Collection Efforts**

Next, the Court turns to Plaintiff's claim of unreasonable collection efforts. A claim of unreasonable collection efforts under Texas law requires a showing of "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n*, 2013 WL 363118, 2 (5th Cir. 2013) (citing *EMC Mortg. Corp. v. Jones,* 252 S.W.3d 857, 868 (Tex. App.– Dallas 2008) (noting that "[t]his is the standard for claims of unreasonable collection efforts."). As has been explained by a leading Texas case, "[t]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *EMC Mortg. Corp.,* 252 S.W.3d at 868. Allegations of a borrower's and lender's failure to communicate between themselves "fall far short of satisfying the current Texas standard requiring" for unreasonable collection efforts. *Water Dynamics, Ltd.*, 509 Fed. App'x at 369-370; *Thomas v. EMC Mortg. Corp*., 499 Fed. App'x 337, 342 (5th Cir. 2012) (affirming finding that lender's failure to clearly inform the borrowers of the amount owed on their loan and failure to approve borrowers for permanent loan modification was not the outrageous collection techniques needed to support an unreasonable collection efforts claim).

Here, Plaintiff alleges that Defendants engaged in unreasonable collection efforts by inducing him to default, by telling him that he was qualified for a loan modification, and by giving him instructions to modify his loan but assessing late fees and penalties against his account nonetheless, making foreclosure inevitable. Dkt. 19 at ¶34.

The Court first finds that Plaintiff's allegations do not state the sort of course of harassment or outrageous conduct by Defendants to state a claim under Texas law. *Verdin v. Federal Nat. Mortg. Ass'n*, 540 Fed. App'x 253, 257 (5th Cir. 2013) (finding that allegations regarding promises of a postponed foreclosure and lender's failure to provide an updated reinstatement amount did not support a finding that lender's actions constituted a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.); *Thomas*, 499 Fed. App'x at 342 (affirming grant of summary judgment on unreasonable collection efforts claim where the plaintiffs alleged that the defendants did not clearly inform them of the amount owed and did not approve them because the allegations were "distinguishable in both degree and kind from 'the outrageous collection techniques' required to sustain an intentional-tort claim under Texas law."). Plaintiff's allegations of mental anguish and emotional distress damages – without any allegation of threats or intent to cause bodily harm – may also be fatal to his pleadings. As one federal court has noted, generally, "mental anguish damages alone will not establish a right of recovery; the plaintiff must suffer some physical or other actual damages in order to be entitled to relief." *B.F. Jackson, Inc. v. Costar Realty Info., Inc.*, 2009 WL 1812922, at *5 (S.D. Tex. 2009). "The general rule in Texas ... is that mental anguish alone is insufficient to sustain a recovery of damages, at common law, for unreasonable collection efforts." *McDonald v. Bennett*, 674 F.2d 1080, 1088 -1089 (5th Cir. 1982). *See also Myers v. Bank of America, N.A.*, 2012 WL 1107687, 4 (E.D. Tex. 2012) (Schell, J.) (dismissing unreasonable collection efforts claim where there was no allegation that the defendant's collection efforts were intended to inflict bodily harm).

Moreover, in turning to the summary judgment record, in support of his unreasonable collections efforts claim, Plaintiff cites to various portions of his Exhibit 3, Certified Copies of Declarations File for *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation (No. 1:10-md- 02193)*. Plaintiff argues that the declarations submitted in this unrelated case show a deliberate pattern of misrepresentation by Bank of America. The Court does not agree.[5]

Nothing in the cited declarations reference *Defendants*' handling of *Plaintiff*'s loan, making the purported evidence irrelevant to any claims here. The connection between the allegations in the declarations and the facts of Plaintiff's case is far to tenuous to be relevant such that it would make Plaintiff's claims more or less probable, and, any relevance would be outweighed by its prejudicial nature. *See* FED R. EVID. 401 & 403. Moreover, even if these declarations were admissible and relevant to Plaintiff's claims, they fail to create a fact issue that Defendants intended to cause ***bodily harm to Plaintiff*** in taking any of these actions. They are simply not enough to create a fact issue as to Plaintiff's claims of unreasonable debt collection. *Smith v. JPMorgan Chase Bank, N.A.*, 519 Fed. App'x 861, 864-865 (5th Cir. 2013) (affirming grant of summary judgment where plaintiff's affidavit regarding harassing phone calls was not enough to raise a genuine issue of material fact as to a course of willful, wanton and malicious conduct intended to cause mental anguish and bodily harm); *Milton v. U.S. Bank Nat. Ass'n*, 508 Fed. App'x 326, 330, 2013 WL 264561, 3 (5th Cir. 013)

---

[5]Defendants have filed a motion to strike these materials. Because the Court finds that, even if they were admissible, they fail to create any fact issues here, the Court need not address the motion to strike. Therefore, Motion to Strike Plaintiff's Summary Judgment Evidence (Dkt. 45) is DENIED as MOOT.

(affirming summary judgment on unreasonable collection claim where the summary judgment record contained no evidence other than the plaintiff's speculation that defendant's actions were willful, wanton, malicious and intended to inflict mental anguish and bodily harm). Without any summary judgment evidence creating a fact issue as to intent to cause him physical harm – or even argument to that effect – Plaintiff cannot prevail on a claim of unreasonable collection efforts. The motion is GRANTED as to this claim.

**Violations of the Texas Debt Collection Practices Act**

Plaintiff brings claims under Sections 392.304(a)(19), 392.304(a)(8), 392.303(a)(2) and 392.301(a)(8) of the Texas Finance Code, as well as Section 392.101 and the DTPA's tie- in statute Section 392.404.

As to Section 392.304(a)(19), Plaintiff alleges that Defendants wrongfully rejected Plaintiff's reinstatement payment, charged penalties and fees against Plaintiff's account, and misstated Plaintiff's monthly payments, to the point of foreclosure. Dkt. 19 at ¶40. As to Section 392.304(a)(8), Plaintiff claims that Defendants misrepresented the amount of Plaintiff's debt on "numerous occasions" and cites to the March through November 2010 mortgage statements, arguing that the amount due listed on the statement did not represent the total due. Dkt. 19 at ¶40. Plaintiff further claims that Defendants misapplied funds by failing to apply the May 2010 escrow payment to Plaintiff's escrow balance and by posting Plaintiff's August 2010 payment to his suspense account rather than his principal and interest account. *Id.* As shown below, all of Plaintiff's TDCA claims fail.

Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE § 392.304(a)(8). Section 392.304(a)(19) prohibits a debt collector from "using any other false representation or deceptive means to collect a debt." TEX. FIN. CODE § 392.304(a)(19). To constitute a misrepresentation under the TDCA, "the debt collector must have made an *affirmative statement* that was false or misleading." *Verdin v. Federal Nat. Mortg. Ass'n*, 540 Fed. App'x 253, 257 (5th Cir. 2013) (internal citations and quotations omitted) (lender's statement "not to worry about the foreclosure," was not an affirmative statement that it would forgo foreclosure and therefore did not constitute a violation of TDCA). *See also Massey v. EMC Mortg. Corp.*, 2013 WL 5913753, 3 (5th Cir. 2013) (lender's offers regarding waiving late charges at end of loan modification period and other loan modification representations and lender's request for a specific document and then stating that all documents had expired and were insufficient were not sufficient to constitute affirmative statements that misrepresented the character of the debt in violation of the TDCA); *Watson v. CitiMortgage, Inc.*, 530 Fed. App'x 322, 328 (5th Cir. 2013) (no evidence to support allegation that either the scheduling of the foreclosure sale or the delayed arrival of the loan modification documents constitutes a "false representation or deceptive means to collect a debt" in violation of section 392.304(a)(19)). In cases like Plaintiff's case, failure to modify a loan as promised alone are not enough to state a claim under 392.304(a)(19). *Thomas v. EMC Mortg. Corp*., 499 Fed. App'x 337, 343 (5th Cir. 2012) (no authority indicates that a bank's failure to modify a loan as promised constitutes a violation of Section 392.304(a)(19)). The Court thus review the record for an affirmative misrepresentation – that Defendant would not foreclose – to

determine whether this claim survives. *Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 717, 724 (5th Cir. 2013) ("the Millers did not allege any specific deceptive acts or practices by BAC that could constitute a violation of the provision").

In his summary judgment response, Plaintiff cites to his affidavit, to an October 16, 2009 letter to Plaintiff from Bank of America regarding a loan repayment plan, and to photocopies of several checks made payable to Bank of America in October, November and December 2009 for the amounts listed in the October 16, 2009 letter. *See* Dkt. 36-1 at 1-4, 40-52. Plaintiff argues that he was lead to believe that, if he kept making repayments according to the plan, no foreclosure sale would occur. *See* Dkt. 36 at 19. Plaintiff also cites to a December 21, 2009 email from a Bank of America Assistant Branch manager to (what appears to be) a Bank of America customer service department representative regarding Plaintiff's loan. *See* Dkt. 36-1 at 53. In support of his misrepresentation claims, Plaintiff also cites to twelve pages of deposition testimony of Bank of America's corporate representative, reviewing Bank of America's internal records addressing the possible modification of Plaintiff's loan. *See* Dkt. 36-4 at 9-12.

Plaintiff's summary judgment evidence creates no fact issue regarding an affirmative misrepresentation regarding foreclosure. In fact, the October 16, letter clearly indicates that "[d]uring this repayment period, the loan will be reported as delinquent, late charges will be assessed, and other additional amounts may become past due until the account is brought fully current" and that if the terms of the repayment agreement were not met "all amounts that are owed on the loan will become immediately due and payable, and BAC Home Loans Servicing, LP will have to proceed with collection activity on the account up to and including foreclosure if

arrangements are not made to bring the account current." Dkt. 36-1 at 40. And, although the December 21, 2009 email relied upon by Plaintiff creates a fact issue as to an apparent confusion (experienced by both Plaintiff and Defendant Bank of America's own representatives) regarding the repayment plan, it does not create a fact issue as to whether Bank of America made an affirmative representation that it would not foreclose on Plaintiff's home. *See* Dkt. 36-1 at 53. The corporate representative deposition testimony regarding Plaintiff's loan file review and possible modification also creates no fact issue as to any affirmative misrepresentations. *See* Dkt. 36-4 at 9-12. More importantly, Plaintiff has failed to show how the evidence, under governing precedent, could create a fact issue as to his TDCA misrepresentation claims.[6]

The Court notes that Plaintiff also cites to his own affidavit to argue that Defendant violated Section 392.304(a)(19) by rejecting his reinstatement payment and then charging penalties and fees, misstating his monthly payments and misrepresenting the amount of his debt. *See* Dkt. 36 at 19. Plaintiff further argues that the amount due listed on the March through November 2010 mortgage statements does not represent the total actually due. *Id.* Plaintiff also claims that Defendants misapplied funds by failing to apply an escrow payment and by posting another payment to his suspense account rather than his principal and interest. *Id.*

---

[6]The Court notes that Plaintiff cites to an unpublished district court case from the Northern District of Texas, *Neaville v. Wells Fargo, N.A.*. In a recent case, the Northern District clearly distinguished the facts in *Neaville* and found that summary judgment was proper on the plaintiff's TDCA claims because there was no evidence of a misrepresentation. *Rhodes v. Wells Fargo Bank, N.A.*, 2013 WL 2090307, 13 (N.D. Tex. 2013). The *Rhodes* court noted that the plaintiff in *Neaville* "provided evidence that Wells Fargo misled him by informing him that he qualified for a loan modification." *Id.* No such evidence of an affirmative misrepresentation exists here, and the *Neaville* opinion is thus of little relevance to the Court's analysis.

Plaintiff fails to cite to any portion of the summary judgment record to support these allegations, nor has Plaintiff shown how any evidence supports these claims or even stated the amounts he contends were "actually due."  And, although it is not the Court's burden to do so, the Court cannot even identify any mortgage statements submitted by Plaintiff in support of his summary judgment response.[7]  His affidavit statements and conclusory allegations are simply not enough. *See Sanchez v. Dallas/Fort Worth Intern. Airport Bd.*, 2011 WL 3667435, 3 (5th Cir. 2011) ("a self-serving affidavit, without more evidence, will not defeat summary judgment.") (citing *DIRECTV, Inc. v. Budden,* 420 F.3d 521, 531 & n. 49 (5th Cir. 2005)); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (affirming summary judgment for plaintiffs where "the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant"); *see also United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (affirming summary judgment for plaintiff where defendant's only evidence consisted of "self-serving allegations," which "are not the type of significant probative evidence required to defeat summary judgment" (internal quotation marks and citation omitted)).   Summary judgment is granted as to Plaintiff's claims under Sections 392.304(a)(19) and 392.304(a)(8) of the Texas Finance Code.

As to Section 392.303(a)(2), Plaintiff claims that Defendants attempted to collect late fees and penalties which accrued only because Plaintiff paid the amount stated on the monthly statements which was less than the amount due.  Dkt. 19 at ¶40.  Further, Plaintiff claims, Defendants violated this section by attempting to collect fees and penalties after rejecting Plaintiff's reinstatement

---

[7]The Court notes that Defendants have submitted several 2010 mortgage statements in support of their motion for summary judgment.  *See* Dkt. 35-2 at 120-135.  Plaintiff has not even cited to these statements to show how the amounts listed did not reflect the amount due.

payment. *Id.* Plaintiff cites to his own affidavit and his returned reinstatement payment to argue that Defendant "imposed numerous charges (i.e., late charges, fees, corporate advances, foreclosure fees) on Plaintiff's account, which would not have been chargeable if BOA had permitted Plaintiff to reinstate his loan when Plaintiff paid the $27,836.74." Dkt. 36 at 20.[8]

Section 392.303(a)(2) prohibits "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation *unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.*" TEX. FIN. CODE § 392.303(a)(2) (emphasis added). Thus, if a loan agreement allows for such fees, the charging of them cannot form the basis of a claim under Section 392.303(a)(2), even where the borrower contests the validity of the default triggering them under the parties' agreement. *Verdin v. Federal Nat. Mortg. Ass'n*, 540 Fed. App'x 253, 257 (5th Cir. 2013); *Watson v. CitiMortgage, Inc.*, 530 Fed. App'x 322, 328 (5th Cir. 2013). Further, while it applies to improper fees, it does not apply to unexplained fees such that a misrepresentation of the amount due cannot constitute a violation of Section 392.303(a)(2). *Thomas v. EMC Mortg. Corp.*, 499 Fed. App'x 337, 343 (5th Cir. 2012). Summary judgment is granted for Defendants as to Plaintiff's claims under Section 392.303(a)(2).

As to Section 392.301(a)(8), Plaintiff alleges the Defendants' foreclosure was prohibited by law since they did not possess the power to accelerate or foreclose because they did not hold the

---

[8]Plaintiff also argues that "Defendants attempted to collect late fees and penalties, which accrued only because Plaintiff paid the amount stated on the monthly statements, which ended up being less that the amount due," but fails to cite to any summary judgment evidence or show how the evidence creates a fact issue and has therefore not sustained his summary judgment as to this argument. *See* Dkt. 36 at 20.

Note.  Dkt. 19 at ¶40.  As to Section 392.101, Plaintiff alleges that Defendants were not bonded by the Secretary of State.  *Id*. at ¶41.

In their summary judgment reply, Defendants argue that Plaintiff has abandoned his claim under Sections 392.101, 392.301(a)(8) and for damages under the DTPA.  Dkt. 44 at 22.  Plaintiff's surreply does not provide any response to this contention.  Moreover, Plaintiff's summary judgment response does not cite to any evidence or argument to show a genuine issue of material fact as to these claims.  Therefore, summary judgment is GRANTED for Defendants as to Plaintiff's claims under Sections 392.101 and 392.301(a)(8), and because Plaintiff has failed to create any fact issue as to his TDCA claims, any claim under the DTPA also fails.  Plaintiff shall take nothing by any of his claims under the TDCA.

## Negligent Misrepresentation

As to his negligent misrepresentation claim, Plaintiff alleges that Defendants made representations to him regarding his mortgage account and the foreclosure sale.  Dkt. 19 at ¶46.  Specifically, Plaintiff argues, Defendants misrepresented the amount due for the monthly payments of March through November 2010 and Defendants told him that they do not foreclose during the loan modification process, but pursued foreclosure anyway.  Dkt. 19 at ¶48.  Plaintiff alleges that he incurred damages as a result of Defendants' alleged misrepresentations in the form of court costs, actual damages, including payments he made, and exemplary damages.  *Id.*

Under Texas law, a claimant alleging negligent misrepresentation must show the following: (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the

guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation. *Biggers v. BAC Home Loans Serv., LP*, 767 F. Supp. 2d 725, 734 (N.D. Tex. 2011) (quoting *Sloane*, 825 S.W.2d at 442) (internal quotations omitted). Of critical importance here is that, in order to prevail on a claim of negligent misrepresentation in Texas, the misrepresentation at issue must be one of existing fact because "under Texas law, promises of future action are not actionable as a negligent-misrepresentation tort." *De Franceschi v. BAC Home Loans Serv., L.P.*, 477 Fed. Appx. 200, 205, 2012 WL 1758597, 3 (5th Cir. 2012) (citing *Scherer v. Angell,* 253 S.W.3d 777, 781 (Tex. App.-Amarillo 2007, no pet.)).

In support of his negligent misrepresentation claim, Plaintiff again cites to various portions of his Exhibit 3, Certified Copies of Declarations File for *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation (No. 1:10-md- 02193). See* Dkt. 36 at 21. As noted above, even if this evidence were admissible, it is not specific to any misrepresentations made *to Plaintiff* and fails to create a fact issue as to *Plaintiff*'s claims here. Plaintiff again argues – as he does in support of his TDCA allegations – that Defendants misrepresented the amounts due for the monthly payments between March through November, and again fails to cite to any summary judgment evidence, indicate the amounts paid, or show how the evidence creates any fact issue. He has not sustained his summary judgment burden as to those allegations.

As to any promises of future loan modifications, even if properly cited to in the summary judgment record – which they are not – they cannot form the basis of his negligent misrepresentation claim. Fifth Circuit authority is clear that, under Texas law, "representations regarding future loan

modifications and foreclosure constitute promises of future action rather than representations of existing fact" and will not support a claim for negligent misrepresentation. *Thomas v. EMC Mortg. Corp.*, 2012 WL 5984943, 3 (5th Cir. 2012) (citing *Scherer v. Angell,* 253 S.W.3d 777, 781 (Tex. App. – Amarillo 2007, no pet.)).[9] *See also Massey v. EMC Mortg. Corp.*, 2013 WL 5913753, 4 (5th Cir. 2013) (statements regarding eligibility for loan modification and promises regarding any future waiver of late charges after trial period payments are promises of future action and cannot form the basis of negligent misrepresentation claim); *Watson v. CitiMortgage, Inc.*, 530 Fed.App'x, 322, 328 (5th Cir. 2013) (lender's alleged promise not to proceed with foreclosure on deed of trust that secured loan, pending borrower's application for loan modification, was not actionable for negligent misrepresentation). *Milton v. U.S. Bank Nat. Ass'n*, 2013 WL 264561, 2 (5th Cir. 2013) (plaintiff did not state viable negligent misrepresentation claim based on promise that mortgage servicer would not foreclose during loan modification because it was promise of future conduct). Even if Plaintiff offered summary judgment evidence, other than his affidavit, to support his claim, Plaintiff's claims that he relied on Defendants' representations regarding the postponement of foreclosure relate to "representations as to conditional future events and promises of future conduct, not statements of existing fact....and are not actionable as a negligent-misrepresentation tort." *James v. Wells Fargo Bank, N.A.,* 533 Fed. App'x 444, 448 (5th Cir. 2013).

The only promise of existing fact alleged by Plaintiff is his claim that Defendants misrepresented the amounts owed. Even assuming Plaintiff had created a fact issue in the summary

---

[9]The *Thomas* case relied upon by Plaintiff is a case out of New York, does not construe Texas law, and thus has no precedential or persuasive value here. *See Thomas v. JPMorgan Chase & Co.*, 811 F.Supp.2d 781 (S. D. N.Y. 2011).

judgment record as to this claim by properly citing to the evidence in the record, it is barred by the economic loss rule. The economic loss doctrine has been applied consistently to bar claims for negligence and other tort claims when the parties' relationship and its attendant duties arise from a contract. *See Southwestern Bell Tel. Co. v. Delanney* 809 S.W.2d 493, 494-95 (Tex. 1991) ("if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract," and affirming dismissal of negligence claims based on breach of contractual duty); *see also Hugh Symons Group v. Motorola, Inc.,* 292 F.3d 466, 470 (5th Cir. 2002) (citing *Haase v. Glazner,* 62 S.W.3d 795, 799 (Tex. 2002)) (a plaintiff generally "may not recover in tort for claims arising out of an unenforceable contract under the statute of frauds."). In Texas, a plaintiff must show an injury independent from the subject matter of the contract to recover for negligent misrepresentation. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663–64 (Tex. 1998) (per curiam); *see also Narvaez v. Wilshire Credit Corp.*, 757 F. Supp.2d 621, 634 (N.D. Tex. 2010).

Plaintiff argues that he "suffered damages, including loss of credit and damage to credit reputation, lost job opportunities, mental anguish and emotional distress, and loss equal to the value of time he spent attempting to correct Defendants' errors," citing to his own affidavit. Dkt. 36 at 21-22. Curiously, the affidavit contains no sworn statements about any actual damage to Plaintiff's credit,[10] any specific lost job opportunities,[11] or any emotional damages caused by Defendants. *See*

---

[10]Plaintiff alleges that he told a bank representative that missing a payment "would cause [his] credit to deteriorate." Dkt. 36-1 at 2.

[11]Plaintiff does claim that his business's revenue had decreased because of a family illness. Dkt. 36-1 at 2.

Dkt. 36-1 at 1- 4.[12]  Plaintiff has failed to create a fact issue as to any pecuniary loss he suffered independent from the loan agreement and his negligent misrepresentation claim fails.  *Verdin v. Federal Nat. Mortg. Ass'n*, 540 Fed. App'x 253, 255 (5th Cir. 2013).  Summary judgment is GRANTED for Defendants as to Plaintiff's negligent misrepresentation claim.

Because no fact issue has been demonstrated as to Plaintiff's allegations regarding payments on his account, the Court finds no fact issues remain as to his claim for an accounting.  Moreover, because Plaintiff's breach of contract claims fail to create any fact issue such that no justiciable issues remain, summary judgment is granted for Defendants on the declaratory judgment action.

Defendants' Motion for Summary Judgment (Dkt. 35) is GRANTED in its entirety and Plaintiff shall take nothing by any of his claims here.

**SO ORDERED.**

**SIGNED this 31st day of March, 2014.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

---

[12]In response to Defendants' argument as to the lack of summary judgment evidence showing his alleged damages, Plaintiff argues in his surreply that "Plaintiff has presented evidence of personal injuries, which are outside the subject matter of the contract and benefit-of-the-bargain damages" but again cites to no evidence.  Dkt. 48 at 4.